IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MD HASNAT, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Case No. SAG-24-02175 |
| | * |
| MARCO RUBIO, *et al.*, | * |
| | * |
| Defendants.[1] | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff MD Hasnat ("Plaintiff"), who is represented by counsel, filed this action against the United States Secretary of State, the Attorney General, and other government officials (collectively "the Defendants") asking this Court to compel United States Citizenship and Immigration Services (USCIS) to expedite adjudication of his Form I-589 Application for Asylum and Withholding of Removal. ECF 10. Plaintiff seeks relief under the Mandamus Act and the Administrative Procedures Act (APA). The Defendants have filed a Motion to Dismiss the Complaint, or, in the alternative, for Summary Judgment: ECF 10. The Court has reviewed the Motion, along with the related Opposition and Reply. *See* ECF 11, 12. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, the Defendants' motion will be treated as a motion for summary judgment and will be granted.

---

[1] Because there has been a change in administration since this suit was filed, the current Secretary of State, Attorney General, and other confirmed officials are automatically substituted as parties to this action. *See* Federal Rule of Civil Procedure 25(d). The Clerk of Court is directed to amend the docket to replace the first-named defendant, Antony Blinken, with the new Secretary of State, Marco Rubio.

I.  **FACTUAL BACKGROUND**

The following facts from the Complaint are accepted as true. *See, e.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). Plaintiff, a national of the People's Republic of Bangladesh, entered the United States on January 9, 2022 on a student visa. ECF 1 ¶ 1.[2] Plaintiff endured "severe persecution and credible threats to his life" in Bangladesh due to his sexual orientation. *Id.* ¶ 2. Plaintiff describes a number of such serious incidents in his Complaint. *Id.* On June 6, 2022, Plaintiff completed and submitted an I-589 Application for Asylum. *Id.* ¶ 3. He has remained in the U.S. as a law-abiding resident and has received a permit to work legally in this country, which remains valid. *Id.* ¶ 4. Plaintiff alleges that he has suffered financial hardships and mental stress due to the fact that his asylum application has been pending for more than two years. *Id.* ¶¶ 5–6.

I.  **LEGAL STANDARDS**

The Defendants have filed a motion to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or, in the alternative, a motion for summary judgment. ECF 10.

Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008). The court may properly grant a motion to dismiss for lack of subject

---

[2] Instead of using sequentially numbered paragraphs throughout the pleading, Plaintiff's Complaint twice begins a new paragraph numbering system, again starting with paragraph number 1, on pages 10 and 13. Plaintiff's counsel is advised against using this system in the future, as it makes citation by this Court much more difficult. References in this section of this Memorandum Opinion are to the paragraph numbering sequence starting on page 10 of the Complaint.

matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

In the alternative, in this case, Defendants seek summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure. Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material fact. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)). Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all

other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

Typically, summary judgment is not granted "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont*, 637 F.3d at 448-49. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To present the issue, the nonmovant is typically required to file an affidavit pursuant to Federal Rule of Civil Procedure 56(d), explaining why "for specified reasons, it cannot present facts essential to justify its opposition," without further discovery. In this case, Plaintiff did not file a Rule 56(d) affidavit and did not present any evidence in opposition to the summary judgment motion.

## II.     ANALYSIS

The Mandamus Act provides district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus is an "extraordinary remedy" which can be employed only after a plaintiff has exhausted all other avenues of relief and which "will issue only to compel the performance of a clear nondiscretionary duty." *Pittson Coal Group v. Sebben*, 488 U.S. 105, 121 (1988). Here, Plaintiff has not yet exhausted all other avenues

of relief. Antonio Donis, the Director of the Arlington Asylum Office where Plaintiff's application is pending, affirmed in a sworn affidavit that Plaintiff has not yet requested an expedited adjudication of his application. ECF 10-2 ¶ 28.[3]

Turning to the APA claim of unreasonable delay, Plaintiff correctly notes that the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1158(d)(5)(iii), provides that evaluation of asylum applications "shall be completed within 180 days" of filing, absent extraordinary circumstances. But Congress expressly precluded a private right of action to enforce the timing provision (or other provisions) in the statute. 8 U.S.C. § 1158(d)(7). Thus, the Defendants contend that asylum applicants are owed no duty to adjudicate their applications within a specified time frame, rendering the timeliness of application adjudication "discretionary."

This Court disagrees with that analysis in light of Fourth Circuit precedent. Although the agency unquestionably makes a discretionary decision about whether to grant asylum relief to an applicant, the Immigration and Naturalization Act (INA) uses the mandatory language "shall be completed" to describe USCIS's processing of the asylum applications it receives. 8 U.S.C. § 1158(d)(5)(A)(iii). The Fourth Circuit's opinion in *Gonzalez v. Cuccinelli*, 985 F.3d 357 (4th Cir. 2021), highlights the importance of assessing whether Congress or an agency used mandatory or permissive language in determining whether the agency "has discretion over whether" to take action at all. *Id.* at 366.

Here, the statutory language clearly states that USCIS is required to adjudicate Plaintiff's asylum application — it is an act that Congress said "shall be completed." Because the INA

---

[3] Even if Plaintiff had exhausted all other avenues of relief, his claim would not be cognizable in mandamus because the non-discretionary duty to process his asylum application is not tied to any enforceable time frame. His claim is better suited to the APA's prohibition against unreasonable delay.

imposes a non-discretionary duty on the agency to evaluate the application and render a decision, Plaintiff may seek to enforce that duty under the APA, which authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

This Court then turns to whether the delay in processing Plaintiff's asylum application is reasonable. As the Fourth Circuit recognized in *Gonzalez*, courts use a six-factor analysis set forth by the D.C. Circuit to determine whether an agency's delay is reasonable or unreasonable. *Telecommunications Research & Action Center (TRAC) v. FCC,* 750 F.2d 70, 80 (D.C. Cir. 1984). Those six factors, known as the "*TRAC* factors" are:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for the rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Gonzalez*, 985 F.3d at 375 (citing *TRAC*, 750 F.2d at 80). No single factor is dispositive, but the first and fourth factors are often viewed as carrying the greatest weight. *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 339 (D.C. Cir. 2023); *In re Core Communications, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) ("The first and most important factor is that the time agencies take to make decisions must be governed by a 'rule of reason'"); *Zaman v. U.S. Dep't of Homeland Sec.*, Civ. No. 19-cv-3592, 2021 WL 5356284, at *7 (D.D.C. Nov. 16, 2021) ("The fourth factor…carries the greatest weight in many cases." (internal quotation marks omitted)).

The Defendants seek dismissal of Plaintiff's claims, citing both a lack of subject matter jurisdiction and a failure to state a claim. ECF 10. But in *Gonzalez*, the Fourth Circuit noted that

6

"[a] claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage." *Gonzalez,* 985 F.3d at 375. Perhaps recognizing that concern, the Defendants seek summary judgment in the alternative, adducing facts and evidence relevant to the required *TRAC* analysis. ECF 12. As noted above, Plaintiff did not file a Rule 56(d) affidavit and did not attach any evidence or affidavits in support of his claims. Because Plaintiff had ample notice that Defendants sought summary judgment in the alternative, this Court deems it appropriate to evaluate the case under the summary judgment standard and apply the *TRAC* factors.

Here, in light of the Defendants' significant evidence, Plaintiff has not put forth sufficient evidence to create a genuine issue of material fact under the *TRAC* factors. The first factor, the "rule of reason," favors the Defendants. Applying the rule of reason to agency action requires due consideration of "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). The question turns on whether "there is any rhyme or reason for the Government's delay." *Arabzada v. Donis*, 725 F. Supp. 3d 1, 14 (D.D.C. 2024). The Defendants have more than explained the "rhyme or reason" behind the extended length of time asylum applications are pending before the agency. Specifically, they have provided a sworn declaration from John Lafferty, the Chief of the Asylum Division at USCIS, ECF 10-1, which explains the history of the massive backlog, the effects that different approaches to interview scheduling have had on the size of the backlog, the agency's historical and ongoing challenges with staffing and funding, and the effect that court cases have had on the agency's prioritization efforts, among other factors. *Id.* Chief Lafferty's declaration also explains the reasons why the current "last in, first out" (LIFO) system for interview scheduling has been deemed the best way

to control the size of the backlog and expedite processing across the board. *Id.* In light of that compelling evidence, this Court finds that USCIS has established a "rule of reason" for the delay weighing heavily in its favor. *See Da Costa*, 80 F.4th at 342 (reasoning that the "length of the wait alone is not sufficient to show that USCIS does not follow a rule of reason," acknowledging that obstacles including "the competing demands on the agency" preclude such a conclusion). LIFO is an imperfect system that places some applicants ahead of others in line, but USCIS offers a valid reason for its use and it provides "an orderly chronological approach." *Arabzada*, 725 F.Supp.3d at 15 (listing cases in various circuits also ruling that LIFO constitutes a rule of reason).

The second *TRAC* factor, a Congressional timetable, weighs just slightly in favor of Plaintiff because, in the INA, Congress provided a 180-day timetable for adjudication of asylum applications. However, Congress also specified that the timeline is not privately enforceable and provided discretion to the agency to depart from it in exceptional circumstances. A backlog exceeding one million applications (at least as of the end of FY 2024 Q2) constitutes exceptional circumstances warranting an extended timeline. *See* ECF 10-1 (Lafferty aff.) ¶ 34.

Factors three and five, which are often considered together, would weigh slightly in Plaintiff's favor had Plaintiff adduced evidence to support the allegations he made in his Complaint. If this Court were to accept those allegations as true despite the lack of evidence, Plaintiff suffers "constant fear of deportation" and is "unable to plan for the future," which has led to great anxiety. ECF 1 at 12 ¶ 5. He has also alleged that uncertainty over his immigration status has limited his career progression. ECF 1 at 13 ¶ 6. Those facts, if substantiated, would provide some support for the notion that human health and welfare has been affected by the delay, although Defendant has introduced countervailing evidence that Plaintiff has been permitted to live and work in the United States while his application is pending.

The fourth factor, the "effect of expediting delayed action on agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80, weighs overwhelmingly in the Defendants' favor. As the Fourth Circuit has recognized:

> The Attorney General is charged with balancing the need for adequate protections for asylum seekers against a backlog of tens of thousands of cases that leave many asylum seekers in limbo. The agency operates in an environment of limited resources, and how it allocates those resources to address the burden of increasing claims is a calculation that courts should be loath to second guess.

*Blanco de Belbruno v. Ashcroft*, 362 F.3d 272, 280 (4th Cir. 2004). While this Court in no way discounts Plaintiff's experiences in Bangladesh and the anxiety he suffers fearing an adverse decision on his asylum application, thousands and thousands of other applicants are in similar positions harboring similar concerns. Plaintiff essentially asks this Court to reprioritize USCIS's cases to adjudicate his case before other applicants'. Court intervention in that manner unfairly benefits asylum applicants with sufficient resources (financial or otherwise) to pursue court action, leaving those lacking such resources to repeatedly move backwards in line as a result.

Finally, the sixth *TRAC* factor does not weigh in either direction. Plaintiff makes no allegation of impropriety, bad faith, or unfair treatment with respect to his application. He simply finds himself mired in an enormous backlog resulting in lengthy waits for all asylum applicants.

This Court's review of the six *TRAC* factors leads it to conclude that Plaintiff has not established a genuine issue of material fact regarding the reasonableness of the delay he has faced. The Court weights factors one and four most heavily and finds that Plaintiff has neither established that USCIS lacks a rule of reason nor that the nature and extent of his interests that have been prejudiced by the delay could outweigh the systemic harm that would accrue with court intervention into USCIS's prioritization of applications. Moreover, this ruling aligns this Court with myriad other courts who have recently found, after applying the *TRAC* factors, that delays

9

even longer than Plaintiff's are reasonable and do not warrant judicial relief. *See, e.g.*, *Noumbissie v. Garland*, Civ. No. RDB-22-3357, 2023 WL 8600510, at *2 (D. Md. Nov. 1, 2023) (over three years); *Tawah v. Mayorkas*, Civ. No. TJS-24-3930, 2024 WL 2155060, at *2 (D. Md. May 14, 2024) (more than three years); *Arabzada*, 725 F. Supp.3d at 18 (over three-year delay); *Maxhuni v. Mayorkas*, No. 23 Civ. 9076(DEH), 2024 WL 3090165 (S.D.N.Y. June 20, 2024) (more than four-year delay); *Reyes Briseda v. Lehman*, Civ. No. 23-cv-00495-TSH, 2024 WL 2112864 (N.D. Ca. May 8, 2024) (over three-year delay). Application of the *TRAC* factors in this case, therefore, demonstrates that summary judgment in favor of the Defendants is warranted.

### III. CONCLUSION

For the reasons set forth above, the Defendants' Motion to Dismiss, or, in the alternative, for Summary Judgment, ECF 10, is treated as a motion for summary judgment and GRANTED. A separate Order of Judgment follows.

Dated:  March 3, 2025 /s/
Stephanie A. Gallagher
United States District Judge

-